IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ANTOINE TUGGLE, | ) | CASE NO. 3:11 CV 467 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
    A.    Background facts, 2007 trial and sentence  . . . . . . . . . . . . . . . . . . . . . .  -3-
    B.    Motion for new trial, direct review, and re-sentencing . . . . . . . . . . . . .  -4-
        1.    2007 motion for new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -4-
        2.    2007-08 direct appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
            a.    Ohio appeals court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
            b.    Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . .  -7-
            c.    United States Supreme Court . . . . . . . . . . . . . . . . . . . . .  -9-
        3.    Re-sentencing and direct review . . . . . . . . . . . . . . . . . . . . . . .  -9-
            a.    Re-sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -9-
            b.    Appeal to Ohio appeals court . . . . . . . . . . . . . . . . . . . .  -10-
            c.    Appeal to Supreme Court of Ohio . . . . . . . . . . . . . . . . .  -11-
    C.    Federal habeas petitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -13-
        1.    Case No. 3:10-cv-812 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -13-
        2.    Case No. 3:11-cv-467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
            a.    Claims for relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
            b.    State's return of the writ . . . . . . . . . . . . . . . . . . . . . . . . .  -15-
            c.    Subsequent filings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
        1.    AEDPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
        2.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -20-
        3.    Fair presentment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -22-
        4.    Non-cognizable grounds . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -24-

C.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
   1.    Ground one – improper amendment of indictment . . . . . . . . . . . -26-
   2.    Ground two – Confrontation Clause violation . . . . . . . . . . . . . . . -30-
   3.    Ground four – refusal to instruct on self-defense . . . . . . . . . . . . -33-
   4.    Ground three – ineffective assistance of counsel . . . . . . . . . . . . . -38-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-

## Introduction

Before me[1] is the second petition[2] of Antoine Tuggle for a writ of habeas corpus under 28 U.S.C. § 2254.[3] Tuggle was convicted by a Lucas County, Ohio, jury in 2007 of complicity in the commission of a murder, as well as other offenses.[4] He is currently incarcerated by the State of Ohio at the Toledo Correctional Institution under a 2009 re-sentencing by the Lucas County Court of Common Pleas, which sentence mandates that Tuggle serve an aggregate term of 18 years to life for his convicted offenses.[5]

Tuggle here raise four grounds for habeas relief.[6] The State has filed a return of the writ arguing that three grounds should be dismissed as procedurally defaulted and/or as

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Donald C. Nugent in a marginal entry order dated March 11, 2011.

[2] A prior petition for habeas relief (Case No. 3:10-cv-812) was dismissed on November 18, 2010, by United States District Judge John R. Adams because Tuggle had not yet exhausted his state direct appeal. ECF # 1, Attachment 6.

[3] ECF # 1.

[4] ECF # 10, Attachment (state court record) at 14-16.

[5] *Id.* at 265.

[6] ECF # 1.

non-cognizable issues of state law, and the remaining claim should be denied on the merits.[7] Tuggle has filed a traverse,[8] to which the State filed a sur-reply.[9] Tuggle then filed an answer to the sur-reply.[10]

For the reasons that follow, I will recommend dismissing Tuggle's petition in part and denying it in part.

## Facts

The background facts here are somewhat extensive and include multiple proceedings conducted over four years. The relevant portions of these facts are stated below.

### A.    Background facts, 2007 trial and sentence

As noted by the Ohio appeals court,[11] the present matter originated in a 2006 shooting incident in Toledo that resulted in the death of Jerome Saxton.[12] Essentially, in the early morning hours of June 5, 2006, a procession of about 20 cars containing members of a Toledo street gang (the Nine Hundred Boys) drove down Lincoln Avenue,[13] where Tuggle

---

[7] ECF # 10.

[8] ECF # 11.

[9] ECF # 12.

[10] ECF # 13.

[11] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[12] ECF # 10, Attachment at 100.

[13] *Id.* at 7, 100.

-3-

was present at the home of his aunt.[14] Tuggle, alerted that this caravan of cars contained members of the Nine Hundred Boys,[15] then opened fire on the cars with others; that gunfire struck and killed Saxton.[16]

Tuggle was charged with complicity in Saxton's murder, complicity in the offense of voluntary manslaughter, complicity in aggravated riot, and complicity in felonious assault, all with gun and gang specifications.[17] Tuggle pled not guilty.[18] After a trial that involved testimony from 19 witnesses,[19] a jury found him guilty on all four counts and the firearms specifications.[20] The Lucas County Common Pleas Court then sentenced Tuggle to an aggregate sentence of 18 years to life.[21]

**B.    Motion for new trial, direct review, and re-sentencing**

*1.    2007 motion for new trial*

Tuggle, through the same counsel that represented him at trial, moved for a new trial, citing as reasons that a "surprise" witness not on the State's list testified and that insufficient

---

[14] *Id.* at 112-13.

[15] *Id.* at 101-04.

[16] *Id.* at 104-09.

[17] *Id.* at 100.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 118.

[21] *Id.*

evidence supported the verdict.[22] After the State responded in opposition,[23] the trial court denied the motion.[24]

## 2.    *2007-08 direct appeals*

### a.    *Ohio appeals court*

Tuggle, now with new retained counsel,[25] timely appealed from his conviction and sentence.[26] In his brief to the Ohio appeals court, Tuggle raised the following eight assignments of error:

> 1.    The court erred and the accused was denied due process and a fair trial when the court allowed the state to amend the charges filed by the Grand Jury, which resulted in impermissibly broadening or expanding the charges made in the indictment.[27]
>
> 2.    The court erred, abused its discretion or committed plain error when it allowed the jury to consider (as substantive proof) evidence the admission of which violated the hearsay rule, the defendant's right of confrontation, Rules 404(A) and (B), and the rule against opinion testimony.[28]

---

[22] *Id.* at 17-19.

[23] *Id.* at 20-25.

[24] *Id.* at 26-29.

[25] Tuggle was represented at trial and for the motion for a new trial by Sheldon S. Wittenberg. *See*, *id.* at 14, 17. He was represented on his appeal to the Ohio appeals court by James B. Willis. *See*, *id.* at 30.

[26] ECF # 10, Attachment at 30.

[27] *Id.* at 40.

[28] *Id.*

3.      The court erred, and the accused's right of confrontation was denied, when the court barred the defense's effort effectively cross-examine the state's chief witness, Lawrence Glover, on a most (perhaps the most) critical issue in the case.[29]

4.      The court abused its discretion, simply erred, or committed plain error when it allowed a police officer to give his opinion as to why potential witnesses were reluctant to testify, and when he was allowed to testify that various witnesses were fearful of reprisals or had, in fact, been intimidated.[30]

5.      The appellant was deprived of due process and a fair trial in the wake of the fact that his trial counsel's performance was constitutionally deficient, namely his counsel made errors so serious that he was not functioning as the "counsel" those accused in our courts are guaranteed by the Sixth Amendment.[31]

6.      The Court erred, or abused its discretion, when it refused (after being asked) to instruct the jury on self-defense.[32]

7.      The prosecutors were guilty of misconduct in connection with their elicitation of considerable impermissible evidence and in the wake of certain of the comments made by them during their opening statements and in their summations.[33]

8.      Given the verdicts [sic] finding the appellant guilty were [sic] not supported by substantial and competent evidence sufficient to meet due process standards, it follows these convictions must be reversed for the lack of sufficient evidence to support findings of guilt beyond a reasonable doubt.[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 41.

[32] *Id.*

[33] *Id.*

[34] *Id.*

The State did not file a responsive brief.[35] The Ohio appeals court then overruled all of Tuggle's assignment's of error, affirming the judgment of the trial court.[36] Tuggle, through counsel, then moved for reconsideration,[37] and the appellate court denied the motion.[38]

b.      *Supreme Court of Ohio*

Tuggle, acting through the same appellate attorney, then filed a notice of appeal with the Supreme Court of Ohio.[39] In his memorandum in support of jurisdiction, Tuggle raised the following eight propositions of law:

1.      Due process and a fair trial were denied when the court allowed the State to amend the charges which resulted in impermissibly broadening or expanding the charges in the indictment.[40]

2.      It is inappropriate for the reviewing court to reach a mixed question of law and fact (the case here) or any issue raised for the first time on appeal in the absence of development by the parties or a ruling by the trial judge.[41]

3.      An accused's right of confrontation is denied and the right of confrontation when the court bars the defense's efforts to effectively cross-examine the State's chief witness on a most (perhaps the most) important issue in the case.[42]

---

[35] *See*, ECF # 10 at 4.

[36] ECF # 10, Attachment at 99-142.

[37] *Id.* at 143-61.

[38] *Id.* at 162-63.

[39] *Id.* at 164-66.

[40] *Id.* at 168.

[41] *Id.*

[42] *Id.*

4.   Due process is denied and the right of confrontation violated when a court allows a police officer to give his opinion as to why various potential witnesses were reluctant to testify, and when he was allowed to testify that various witnesses were fearful of reprisals or had, in fact, been intimidated.[43]

5.   Due process and fair trial violations occur when a trial counsel's performance is constitutionally deficient; namely, when counsel makes error so serious that he is not functioning as the "counsel" those accused in our courts are guaranteed by the Sixth Amendment.[44]

6.   A court errors (sic), or abuses its discretion, when it arbitrarily refuses to instruct the jury on self-defense.[45]

7.   The prosecutors were guilty of misconduct in their elicitation of considerable impermissible evidence and in the wake of certain of the comments made by them during their opening statement and in their summations.[46]

8.   Where verdicts finding an accused guilty were not supported by substantial and competent evidence sufficient to meet due process standards, it follows that such convictions must be reversed.[47]

The record does not indicate that the State filed a response.[48] The Supreme Court of

Ohio then denied leave to appeal, dismissing Tuggle's appeal.[49]

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *See*, ECF # 10 at 6.

[49] ECF # 10, Attachment at 232.

*c.*     *United States Supreme Court*

Tuggle then filed a petition for a writ of certiorari with the Supreme Court of the United States.[50] On May 4, 2009, the Supreme Court denied the petition.[51]

**3.     *Re-sentencing and direct review***

*a.*     *Re-sentencing*

On September 10, 2009, Tuggle, acting through the counsel that now represents him in this proceeding, filed a motion with the Ohio trial court seeking re-sentencing and other relief.[52] In his motion, Tuggle argued that his original sentence was void because he was not advised prior to imposition of the sentence that he would be subject to post-release control.[53] The State filed a memorandum in opposition,[54] and the trial court then granted the motion, re-sentencing Tuggle to the same aggregate term of 18 years to life, but now informing him of his post-release obligations.[55]

---

[50] *Id.* at 233.

[51] *Id.* at 234.

[52] *Id.* at 235-41.

[53] *Id.* at 236-37.

[54] *Id.* at 242-52.

[55] *Id.* at 265-67.

b.      *Appeal to Ohio appeals court*

Tuggle, through counsel, then timely filed an appeal from this judgment and sentence.[56] In his brief,[57] Tuggle raised the following seven assignments of error:

1.      The trial court erred by allowing the prosecution to violate the rights of the accused to presentment to a grand jury and to due process, in violation of both the Ohio Constitution and the United States Constitution, when the court allowed the State to amend the charges filed by the grand jury to include allegations of co-conspirators not named by the grand jury in the indictment.

2.      The court erred, abused its discretion or committed plain error when it allowed the jury to consider evidence the admission of which violated the rule against opinion testimony.

3.      The trial court denied to the accused his right of confrontation when the court barred the defense efforts to effectively cross-examine the State's chief witness, Lawrence Glover, as to his cell phone records.

4.      The appellant was denied the effective assistance of counsel, in violation of his rights under both the Ohio Constitution and the United States Constitution.

5.      The court erred when it refused to instruct the jury on self-defense.

6.      The convictions for Count I (complicity to commit murder), Count II (complicity to commit involuntary manslaughter), Count II [sic] (complicity to commit aggravated riot), and Count IV (complicity to commit felonious assault) were against the manifest weight of the evidence.

7.      The convictions for Count I (complicity to commit murder), Count II (complicity to commit involuntary manslaughter), Count II [sic]

---

[56] *Id.* at 268. As the appeals court later noted, because a non-compliant sentence is void, the defendant after re-sentencing is entitled to appeal both the underlying conviction as well as the re-sentence, and any previous appeal is a "legal nullity." *See*, *id.* at 372.

[57] *Id.* at 272-304.

(complicity to commit aggravated riot), and Count IV (complicity to commit felonious assault) were not supported by sufficient evidence.[58]

The State filed a brief in opposition,[59] to which Tuggle filed a reply.[60] The Ohio appeals court then affirmed the decision of the trial court, rejecting all of Tuggle's assignments of error.[61] Tuggle moved for reconsideration of that decision,[62] which motion was opposed by the State.[63] On October 21, 2010, the appeals court denied the motion to reconsider.[64]

c.    *Appeal to Supreme Court of Ohio*

Tuggle, through counsel, promptly filed a notice of appeal with the Supreme Court of Ohio.[65] In his memorandum in support of jurisdiction, Tuggle asserted seven propositions of law:

> Proposition of Law No. 1: The Trial Court erred by allowing the prosecution to violate the rights of the accused to presentment to a grand jury and to due process, in violation of both the Ohio Constitution and the United States Constitution, when the court allowed the state to amend the charges filed by the Grand Jury to include allegations of co-conspirators not named by the Grand Jury in the Indictment.

---

[58] *Id.* at 275-76.

[59] *Id.* at 319-59.

[60] *Id.* at 360-70.

[61] *Id.* at 371-408.

[62] *Id.* at 409-20.

[63] *Id.* at 421-34.

[64] *Id.* at 435-37.

[65] *Id.* at 438-39.

Proposition of Law No. 2: The court erred, abused its discretion or committed plain error when it allowed the jury to consider evidence the admission of which violated the rule against opinion testimony.

Proposition of Law No. 3: The trial court denied to the accused his right of confrontation when the court barred the defense efforts to effectively cross-examine the state's chief witness, Lawrence Glover, as to his cell phone records.

Proposition of Law No. 4: Appellant was denied the effective assistance of counsel, in violation of his rights under both the Ohio Constitution and United States Constitution.

Proposition of Law No. 5: The court erred when it refused to instruct the jury on self-defense.

Proposition of Law No. 6: The convictions for Count I (complicity to commit murder), Count II (complicity to commit involuntary manslaughter), Count II [sic] (complicity to commit aggravated riot), and Count IV (complicity to commit felonious assault) were against the manifest weight of the evidence.

Proposition of Law No. 7: The convictions for Count I (complicity to commit murder), Count II (complicity to commit involuntary manslaughter), Count II [sic] (complicity to commit aggravated riot), and Count IV (complicity to commit felonious assault) were not supported by sufficient evidence.[66]

The State then filed a notice of cross-appeal, followed by a combined response to Tuggle's propositions of law and memorandum is support of jurisdiction, raising three propositions of law:

The State's First Proposition of Law: When a sentence is imposed after July 11, 2006, a mandatory term of post-release control is unaffected by deficiencies in the trial court's notices of post-release control or by the court's failure to incorporate post-release control provisions in the judgment entry.

---

[66] *Id.* at 441.

The State's Second Proposition of Law: A judgment corrected by means of R.C. 2929.191 does not give rise to a right of a new appeal raising errors that were or could have been raised in a defendant's first, direct appeal.

The State's Third Proposition of Law: A judgment entry that omits the basis for conviction may be corrected by a nunc pro tunc entry adding the basis of the conviction, when the basis of the conviction was readily apparent through the record and to the parties. Such nunc pro tunc correction does not extend the time for appeal.[67]

Tuggle filed a reply,[68] and on March 2, 2011, the Supreme Court of Ohio declined jurisdiction, dismissing the appeal and cross-appeal as not involving any substantial constitutional questions.[69] The record does not indicate that either Tuggle or the State sought a writ of certiorari.[70]

## C.    Federal habeas petitions

### 1.    Case No. 3:10-cv-812

As previously noted, Tuggle first filed a petition for federal habeas relief on April 19, 2010, or while Tuggle's appeal from his re-sentencing was still pending before the Ohio appeals court.[71] Because he had not then exhausted his available state remedies, this Court

---

[67] *Id.* at 501.

[68] *Id.* at 531-40.

[69] *Id.* at 541.

[70] *See*, ECF # 10 at 9.

[71] *See*, Case No. 3:10-cv-812, ECF # 8 (Report & Recommendation) at 7.

-13-

dismissed that petition.[72] A motion to reconsider that dismissal order[73] was denied on March 8, 2011.[74]

## 2.    Case No. 3:11-cv-467

The day before that order denying reconsideration of the dismissal of the first habeas petition was filed, Tuggle timely filed the present petition for habeas relief.[75]

### a.    Claims for relief

In this petition, Tuggle sets forth four grounds for relief, together with supporting facts:

> GROUND ONE: The Trial Court erred by allowing the prosecution to violate the rights of the accused to due process, in violation of the United States Constitution, when the court allowed the state to amend the charges filed by the Grand Jury to include allegations of co-conspirators not named by the Grand Jury in the Indictment.[76]

> GROUND TWO: The trial court denied to the accused his right of confrontation when the court barred the defense efforts to effectively cross-examine the state's chief witness, Lawrence Glover, as to his cell phone records.[77]

---

[72] Case No. 3:10-cv-812, ECF # 11.

[73] Case No. 3:10-cv-812, ECF # 12.

[74] Case No. 3:10-cv-812, ECF # 17.

[75] ECF # 1. The present petition was filed within a week of the decision of the Supreme Court of Ohio dismissing Tuggle's motion to appeal from his re-sentencing. Thus, the present petition is timely filed under

[76] ECF # 1 at 6.

[77] *Id.* at 8.

GROUND THREE: The appellant was denied the effective assistance of counsel, in violation of his rights under the United States Constitution.[78]

GROUND FOUR: The court erred when it refused to instruct the jury on self-defense.[79]

b.    *State's return of the writ*

As noted above, the State contends initially that ground one – improper amendment of the indictment – raises only issues of state law and so should here be dismissed.[80] Similarly, the State argues that ground two – purportedly a confrontation clause question – is actually only a dispute over a state-court evidentiary ruling, which is non-cognizable in a federal habeas proceeding.[81] Additionally, the State maintains that the fourth ground for relief – refusal to instruct on self-defense – is again a non-cognizable question of state law.[82] The State also asserts that even if the this fourth ground were cognizable here, it was procedurally defaulted because it was not fairly presented to the Ohio court as a federal constitutional violation.[83]

Finally, the State contends that ground three – ineffective assistance of counsel – should be denied on the merits after AEDPA review because the state appeals court did not

---

[78] *Id.* at 9.

[79] *Id.* at 11.

[80] ECF # 10 at 12-15.

[81] *Id.* at 15-17.

[82] *Id.* at 17-19.

[83] *Id.* at 21-22.

unreasonably apply clearly established federal law.[84] Moreover, the State argues that even if the second ground for relief – confrontation clause – was correctly framed as a constitutional issue and was not a state-law claim, this ground should be denied on the merits because the state trial court never actually denied Tuggle the opportunity to cross-examine the witness in question, although Tuggle did not use that opportunity to do so on the matter at issue.[85]

c.    *Subsequent filings*

Tuggle file an extensive (36-page) traverse,[86] to which the State responded with a sur-reply.[87] Tuggle, in turn, filed an answer to the sur-reply.[88]

# Analysis

## A.    **Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Tuggle is currently in state custody as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, Tuggle meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[89]

---

[84] *Id.* at 26-32.

[85] *Id.* at 25-26.

[86] ECF # 11.

[87] ECF # 12.

[88] ECF # 13.

[89] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

2.      There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[90]

3.      Tuggle has previously filed a petition for federal habeas relief arising out of this conviction and sentence.[91] That matter was dismissed because of failure to exhaust state remedies, and a motion to reconsider that dismissal and reinstate the petition was denied on March 7, 2011.[92] The present petition was filed the same day.[93] Because the initial petition was neither adjudicated on the merits nor dismissed with prejudice, the current petition is not a second or successive petition requiring approval from the Sixth Circuit.[94]

4.      Moreover, subject to the fair presentment arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by presentation through one full round of Ohio's established appellate review procedure.[95]

5.      Finally, because Tuggle, is represented by counsel, he has not requested the appointment of counsel,[96] and an evidentiary hearing is not necessary to develop the factual bases of his claims.[97]

---

[90] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[91] ECF # 1, Attachment; *see also*, Case No. 3:10-cv-812 (N.D. Ohio 2010).

[92] ECF # 17.

[93] ECF # 1.

[94] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[95] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[96] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[97] 28 U.S.C. § 2254(e)(2).

**B.      Standards of review**

*1.      AEDPA*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[98]

In applying that statute, a federal habeas court follows the well-known teachings of *Williams v. Taylor*.[99] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[100] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[101]

---

[98] 28 U.S.C. § 2254(d).

[99] *Williams v. Taylor*, 529 U.S. 362 (2000).

[100] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[101] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

-18-

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[102] Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[103]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[104] and "highly deferential" to the decision of the state court.[105] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[106] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[107]

---

[102] *Williams*, 529 U.S. at 411.

[103] *Id*. at 409.

[104] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[105] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[106] *Harrington*, 131 S. Ct. at 786.

[107] *Id.* at 786-87.

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[108]

As the Supreme Court observed in *Harrington v. Richter*, a state court need not state its reasons or explain its conclusion when it adjudicates a federal claim on the merits.[109] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[110] In such circumstances, the federal habeas court must give deference to the decision of the state court.[111]

### 2. *Procedural default*

Under the doctrine of procedural default, the federal habeas court may not review a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[112]

---

[108] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[109] *Harrington*, 131 S. Ct. at 784-85.

[110] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[111] *Brown*, 656 F.3d at 329.

[112] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

When the State asserts a violation of a state procedural rule as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[113]

In addition to establishing these elements, the state procedural rule must be (a) firmly established, and (b) regularly followed before the federal habeas court will decline review of an allegedly procedurally defaulted claim.[114]

If the State establishes a procedural default, the petitioner may overcome the default if he can show (1) cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result in a fundamental miscarriage of justice.[115] In addition, a showing of actual innocence may also excuse a procedural default.[116]

---

[113] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[114] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[115] *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (citations omitted).

[116] *Id.*

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, prevented him from complying with the state procedural rule.[117] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[118] If the petitioner cannot show a reasonable probability of a different outcome at trial, prejudice does not exist.[119]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[120] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[121]

3.      *Fair presentment*

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms only to habeas claims "adjudicated on the merits in State court proceedings.[122]  When a federal

---

[117] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[118] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[119] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[120] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[121] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[122] 28 U.S.C. § 2254(d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

habeas claim was fairly presented to but not adjudicated on the merits by the state courts, the

federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing

*de novo* questions of law and mixed questions of law and fact.[123]

The requirement of fair presentment initially involves the issue of exhaustion, since

the fair presentment doctrine, like the exhaustion requirement itself, is rooted in important

federal-state comity concerns.[124] If the petitioner does not present the same claim on the same

theory to the state court as is presented to the federal habeas court, state courts do not have

a fair opportunity to resolve the matter on the grounds asserted by the petitioner before the

federal court review the state court decision under the AEDPA.[125]

In the Sixth Circuit, a petitioner may fairly present his federal claim to the state court

in a number of different ways:

(a)     by relying on federal cases employing constitutional analysis;

(b)     by relying on state court cases employing federal constitutional analysis;

(c)     by phrasing the claim in terms of constitutional law or terms sufficiently particular as to allege a denial of a specific constitutional rights;

---

[123] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio 2007).  In circumstances not applicable here, federal courts employ a modified version of AEDPA deference to the state court decision in cases where the state court did not squarely address the petitioner's claim as a federal Constitutional claim, but its analysis nevertheless bears "some similarity" to the requisite analysis set forth in clearly established federal law. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

[124] *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

[125] *Id.*, citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971).

(d)　　by alleging facts well within the mainstream of constitutional law.[126]

But, as the Sixth Circuit has emphasized, fair presentment is not established by showing that the claim presented to the state court was "somewhat similar" to the federal constitutional claim, or that both claims arose out of the same set of facts, or even that a federal claim should have been "self-evident" from the "ramifications" of the state-law claim.[127] "The bottom line is that [there is a lack of fair presentment where] the state courts were not called upon to apply the legal principles governing the constitutional claim now being presented to the federal courts."[128]

Where the petitioner did not present the federal claim but instead a state-law claim, the federal claim is not exhausted. But, when any attempt now to return to state court to exhaust the federal issue would fail as untimely or as barred by *res judicata*, the federal claim is procedurally defaulted.[129]

## 4.　　*Non-cognizable grounds*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[130]  Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which

---

[126] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[127] *Id.*

[128] *Id.*

[129] *Id.*; *see, O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (failure to timely exhaust a habeas claim in state court constitutes a procedural default).

[130] 28 U.S.C. § 2254(a).

federal habeas relief may be granted.[131]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[132]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[133]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[134]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[135]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[136] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[137] and may not second-guess a state court's interpretation of its own procedural rules.[138]  Further, while, in general, distinct constitutional claims of trial

---

[131] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[132] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[133] *Estelle*, 502 U.S. at 67-68.

[134] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[135] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[136] *Id.*

[137] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[138] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

error may not be cumulated to grant habeas relief,[139] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[140]

## C.    Application of standards

### 1.    *Ground one – improper amendment of indictment*

In his first ground for relief, Tuggle contends that the trial court violated his constitutional right to Due Process when it permitted the amendment of the indictment "to include allegations of co-conspirators not named by the Grand Jury in the indictment."[141] The State has attempted to argue that this ground should be dismissed as non-cognizable because of the absence of federal constitutional right to an indictment.[142]

The state appeals court decision here involved an analysis of whether the bill of particulars in this case – which added a phrase referring to unnamed "'other complicitors'" – effectively amended the indictment by changing its terms in violation of the federal constitutional due process right, recognized in *Stirone v. United States*,[143] that once an indictment has been returned it may not be substantively amended without reconvening the

---

[139] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[140] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[141] ECF # 1 at 6.

[142] ECF # 10 at 12-15.

[143] *Stirone v. United States*, 361 U.S. 212 (1960).

grand jury.[144] As such, the state appeals court recognized and adjudicated this claim as one alleging a violation of a cognizable federal due process right.

Ground one now involves a determination of whether the Ohio court's application of *Stirone* to this claim was unreasonable under the standard of review imposed by the AEDPA. The court initially determined that the United States Supreme Court in *Stirone* clearly established the federal law applicable to the ground. The Ohio opinion states:

> Once an indictment has been returned by a grand jury, it may not be substantively amended without reconvening the grand jury. A substantive amendment occurs when the prosecution or the court literally or constructively alters the terms of the indictment after it has been returned by the grand jury.[145]

On appeal, as here, Tuggle asserted that the bill of particulars addition of the phrase "other complicitors" effectively amended the indictment in violation of *Stirone* by transforming the charge against him from being "a conspiracy just between [co-defendant] Brandon Calhoun and Antoine Tuggle to a conspiracy between these two and 'possibly other complicitors....'" [146] Tuggle further contended on appeal, as here, that under *United States v. Salinas*,[147] a Seventh Circuit case construing *Stirone*, where a grand jury could have included an allegation against unnamed actors but did not, the later inclusion of such a charge at trial is "an impermissible amendment to the indictment."[148]

---

[144] ECF # 10, Ex. 1 at 378.

[145] *Id.* citing *Stirone*, 361 U.S. at 215-17.

[146] *Id.* at 379.

[147] *United States v. Salinas*, 654 F.2d 319 (7th Cir. 1981), overruled on other grounds by *United States v. Adamson*, 700 F.2d 953, 965 n.18 (5th Cir. 1983).

[148] ECF # 11 at 18.

The Ohio appeals court, however, found *Salinas* to be distinguishable from Tuggle's case. The court observed first that the indictment in *Salinas* has accused that defendant of aiding and abetting only a specific named individual.[149] Thus, broadening the charge to include Salinas's activities in regards to any other individuals constituted an improper expansion of the original indictment.[150] Here, by contrast, the appeals court made four points:

- The indictment in this case charged both Tuggle and Calhoun as principals, so the charges against Tuggle "were not dependent upon evidence that a named principal committed an act which he then aided, as was the case in *Salinas*."

- The Ohio complicity statute is stated such that a person may be convicted of complicity in the commission of an offense even though the indictment is phrased only in terms of that offense and does not mention complicity. Thus, where one is indicted only on the principal offense, one is on notice that the jury may also be instructed on complicity.

- In that regard, Ohio courts do not read *Salinas* to limit prosecution of complicity offenses to only the named individuals in an indictment. Since by statute the indictment need not mention the word "complicity" to obtain a conviction on that offense, it follows that the indictment need not mention the identity of any individual with whom a defendant is complicit.

- Thus, because the identity of the principal is not necessary to convict on a charge of complicity, identifying the other actors here as either Calhuon alone or "other complicitors" is not material to the essence of the offense – that Tuggle shared the criminal intent of the principal[s].[151]

---

[149] ECF # 10, Attachment 1 at 379-80.

[150] *Id.* at 380.

[151] *Id.* at 379-81.

The appeals court concluded by stating that there was no constructive amendment of the indictment here, and the clearly established federal law, as applied in *Salinas*, was not violated, "because complicity need not be stated in terms of the complicity statute but may be stated, as it was in this case, in terms of the principal offense."[152]

The Fourth Circuit's decision in *United States v. Kellam*[153] directly applies here. In *Kellam*, as with Tuggle, the defendant argued that an improper amendment to his indictment had occurred when the dismissal of the only co-defendant named in the original indictment, Adelson Michel, purportedly added a new factual element to the charge of aiding and abetting made against Kellam, since now someone other than Michel was necessarily the party Kellam aided and abetted.[154]

For the same reasons as given by the Ohio appeals court, the Fourth Circuit concluded that no constructive amendment had occurred. Specifically, the *Kellam* court found that because Kellam, like Tuggle, was also charged as a principal, the amendment did not "impact any essential aspect of the charge or place Kellam in danger of being tried again for the same offense."[155] Thus, the *Kellam* court concluded, in that case, as is true here, any attempt to analogize that situation with *Salinas* is without merit.[156]

---

[152] *Id.* at 381.

[153] *United States v. Kellam*, 568 F.3d 125 (4th Cir. 2009).

[154] *Id.* at 133.

[155] *Id.* at 134 (citation omitted).

[156] *Id.* at 134-35.

The decision of the Ohio appeals court on this ground is not an unreasonable application of the clearly established federal law of *Stirone* because no impermissible constructive amendment of the indictment occurred. Ground one should be denied on the merits.

**2.      *Ground two – Confrontation Clause violation***

On this ground, Tuggle argues here, as he did to the Ohio courts, that the trial court violated his right to confront an adverse witness by prohibiting that witness from authenticating some cell phone records that Tuggle contends could have been used to impeach that witness. In particular, Tuggle asserts that he wanted to use the cell phone record for the cell phone of the state's chief witness, Lawrence Glover, to show, contrary to Glover's testimony, that Glover had made a call to Tuggle that initiated the confrontation on Lincoln Street, not the other way around.[157]

The trial court found that because the phone records had not been authenticated as a business record so as to be an exception to the hearsay rule, the phone records would be excluded from evidence.[158] The state appeals court upheld that decision as not being an abuse of discretion.[159]

This ground has been somewhat altered since originally asserted in the Ohio courts and in the petition here. As the State points out in its sur-reply to Tuggle's traverse, the

---

[157] ECF # 11 at 21; ECF # 10, Attachment at 383-84.

[158] ECF # 10, Attachment at 385-86.

[159] *Id.* at 386.

factual premise of Tuggle's argument appears to rest on a previously undiscovered factual error – that the cell phone records at issue involved Glover's cell phone. In fact, the State contends, the cell phone belonged to Tuggle, not Glover.[160] Glover, therefore, could not have authenticated the records.[161]

Tuggle, in his answer to the sur-reply, agrees that this factual error means that Glover could not have authenticated the cell records but asserts that his ground remains valid nonetheless. Tuggle argues that he himself should have been allowed by the trial court to authenticate the records and then to use those records to impeach Glover's testimony about who initiated the call to be on Lincoln Street.[162] He contends that the protection of the Confrontation Clause should not be limited "by the bad evidentiary rulings of the judiciary."[163]

As noted by the State, the claim here does not strictly involve the Confrontation Clause, since Tuggle's counsel cross-examined Glover at trial, and the issue before the trial court was whether to exclude evidence of cell phone calls that could not qualify as business record exceptions to the hearsay rule.[164] Indeed, the Ohio appeals court noted that while phone records could potentially be admissible, they must first satisfy the requirements of

---

[160] ECF # 12 at 2.

[161] *Id.*

[162] ECF # 13 at 2-3.

[163] *Id.* at 2.

[164] ECF # 12 at 2-3.

authentication – which, the court concluded, was not done here.[165] Similarly, the appeals court found that the unauthenticated phone records could not have been used to refresh Glover's recollection of whether he made the call or not, because it was never established that Glover had any present recollection of the event in question.[166]

Thus, despite its being labeled by Tuggle as a federal Confrontation Clause question, the ground actually calls into question whether the state ruling excluding the cell phone evidence constituted an impermissible limitation on Tuggle's Sixth Amendment right to present a complete defense.

As stated by the Sixth Circuit, the "Sixth Amendment right to present a complete defense ... does not imply a right to present evidence that is otherwise inadmissible under the standard rules of evidence."[167] Accordingly, even properly framed, Tuggle's argument here amounts to a claim that the Ohio court here misapplied its own rule of evidence. But a federal habeas court cannot grant the writ based on its disagreement with a state court's ruling on a question of state law,[168] unless that state court decision is so fundamentally unfair as to deprive the petitioner of due process.[169]

---

[165] ECF # 10, Attachment at 385.

[166] *Id.* at 386.

[167] *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (internal quotation marks omitted).

[168] *Estelle*, 502 U.S. at 68 (1991).

[169] *Bey*, 500 F.3d at 519-20.

-32-

Tuggle never raises this argument.[170]

Accordingly, without any basis for finding that the Ohio decision here was fundamentally unfair as that term is understood by the United States Supreme Court, ground two states a non-cognizable claim challenging a state-law evidentiary ruling. As such, it should be dismissed.

### 3.    *Ground four – refusal to instruct on self-defense*

In ground four Tuggle argues that the trial court erred by not instructing the jury on the affirmative defense of self-defense.[171] The State, in turn, contends that either this ground constitutes a non-cognizable issue of state law[172] or, alternatively, was procedurally defaulted because Tuggle never presented it to the Ohio courts as a federal constitutional claim but only as a purported violation of Ohio law.[173]

The Ohio appeals court dismissed the ground because, under Ohio law, the trial court can give an instruction on self-defense only after a defendant has introduced sufficient

---

[170] Tuggle actually spends his traverse arguing about whether, under the Sixth Amendment Confrontation Clause, there was a reasonable limit put on his ability to cross-examine Glover. ECF # 11 at 21-25. However, where the purported "limit" on cross-examination is the exclusion of evidence by the state court under state evidentiary rules, the proper analytical framework is under the rubric addressing a defendant's "meaningful opportunity to present a complete defense," which is rooted in both the Due Process Clause of the Fourteenth Amendment and the Compulsory Process or Confrontation Clauses of the Sixth Amendment. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Similarly, the State struggles to fashion a precise adjudicatory framework for discussing the appeals court's straightforward decision.

[171] ECF # 11 at 33.

[172] ECF # 10 at 17-19.

[173] *Id.* at 21-22.

evidence that, if believed, would raise a reasonable question about the existence of the offense.[174] The court concluded that because there was "no evidence regarding any actions by the victim against the appellant, or that appellant feared for his life or acted in self-defense or in the defense of others," the trial court did not err under Ohio law in not instructing the jury on self-defense.[175]

Like the situation obtaining as to ground two, clearly established federal law recognizes that the Due Process Clause of the Fourteenth Amendment, and the attendant right of a defendant to present a complete defense, carries with it the right to have the jury instructed "as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in [defendant's] favor."[176] Thus, as the Sixth Circuit teaches, the failure to give an instruction on self-defense when "the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause."[177] In addition, in cases, as here, involving aiding and abetting, "if an attack by a principal is justified by self-defense both the principal and the aider and abetter are relieved from liability."[178]

---

[174] ECF # 10, Attachment at 389-90.

[175] *Id.*

[176] *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citation omitted).

[177] *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002).

[178] *Neal v. Booker*, 497 F. App'x 445, at *6 (6th Cir. 2012) (applying Michigan law).

Here, the matter was not analyzed by the Ohio court as a question of federal law,[179] nor was it fairly presented to Ohio courts as such an issue.[180] At both the appeals court and before the Ohio Supreme Court, Tuggle relied upon *State v. Melchior*;[181] indeed, *Melchior* was the only case cited to the Ohio Supreme Court in Tuggle's two-paragraph argument. *Melchior*, for its part, states the Ohio rule (as was recognized by the appeals court here) that a defendant is entitled to an instruction on self-defense only when there is sufficient evidence has been introduced to raise a reasonable doubt as to whether the defendant acted in self-defense.[182] *Melchior*, in turn, undertakes no federal constitutional analysis but involves an interpretation of the Ohio statute governing the burden of proof in cases with an affirmative defense[183] and on an Ohio Supreme Court case construing that statute.[184]

---

[179] ECF # 10, Attachment at 389-90.

[180] *See*, *id*. at 297-98 (brief on appeal); 454-55 (brief to the Ohio Supreme Court).

[181] *State v. Melchior*, 56 Ohio St. 2d 15, 381 N.E.2d 195 (1978).

[182] *Id.*, 56 Ohio St. 2d at 20, 381 N.E.2d at 199.

[183] *Id.*, citing Ohio Rev. Code § 2901.05(A).

[184] *Id.* citing *State v. Robinson*, 47 Ohio St. 2d 103, 111-12, 351 N.E.2d 88, 91 (1976). *Robinson* also does not rest upon federal constitutional analysis but involves a lengthy review of the law of various states on the issue of burden of proof in affirmative defenses, and whether the Ohio statute codified the prevailing view. The *Robinson* court noted in a footnote that because its decision is "based upon Ohio statutory law, we need not consider whether [the United States Supreme Court case of] *Mullaney* [*v. Willbur*, 421 U.S. 684 (1975)] might constitutionally mandate a similar result." *Robinson*, 47 Ohio St. 2d at 113, 351 N.E.2d 95 n.11.

Accordingly, because Tuggle did not present this ground to the Ohio courts as a clear federal claim under any theory of fair presentment, it was procedurally as not being fairly presented to the Ohio courts as a federal constitutional issue.

In the alternative, if the claim is deemed fairly presented as a federal claim and so preserved for review here on the merits, it cannot withstand AEDPA review. As the Sixth Circuit has noted, subsequent to the United States Supreme Court decision in *Harrington*, AEDPA deference is due to a state court decision on the merits when, as here, a "federal issue has been raised [before the state court] but the state court has denied the claim with a discussion solely of state law."[185]

The Ohio appeals court properly recognized the rule found in Ohio law as well as in *Mathews* that an instruction on self-defense is only required if there is enough evidence to support a finding of that defense by the jury.[186] The court further noted that Ohio law mandates that to establish self-defense a defendant must prove: (1) he was not at fault in creating the situation giving rise to the confrontation, (2) he had a bona fide belief he was in immediate danger of death or great bodily harm and that his only means of escape was the

---

[185] *Moreland v. Bradshaw*, 699 F.3d 908, 922 (6th Cir. 2012). *Moreland* goes on to state that a definitive holding as to the effects of *Harrington* on cases decided only on state-law grounds will likely come in *Cavazos v. Williams*, __ U.S. __, 132 S. Ct. 1088 (2012), a case which was argued before the Supreme Court on October 3, 2012.  *See*, *Johnson v. Williams*, No. 11-465, 2012 WL 4616027, 133 S. Ct. 1088 (2013). Full AEDPA deference in such cases would differ from the modified deference that was the prior rubric. *See*, *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006).

[186] ECF # 10, Attachment at 390.

use of deadly forces, and (3) he did not violate any duty to retreat or avoid the danger.[187]

Failure to prove all three elements results in a failure to establish the affirmative defense.[188]

The appellate court then applied this law to the facts of Tuggle's case, finding that there was no evidence regarding any action of the victim against Tuggle [which goes to the first requirement that the defendant not be at fault in creating the situation] nor was there evidence that Tuggle feared for his own life or acted in self-defense of others.[189] The Ohio appeals court concluded, therefore, that the trial court did not improperly refuse to give an instruction on self-defense.[190]

Applying the clearly established federal law of *Mathews* to this decision, I note that the Ohio court first correctly stated the holding of *Mathews*, as further construed by the Sixth Circuit in *Taylor v. Withrow*, that a defendant only has the right to a self-defense instruction if there is sufficient evidence for the jury to find in his favor in that regard.[191] The court then

---

[187] *Id.* at 389 (citing *State v. Barnes*, 94 Ohio St. 3d 21, 24, 759 N.E.2d 1240, 1244 (2002) (citation omitted)).

[188] *Id.* at 389-90 (citations omitted).

[189] *Id.* at 390. I note that even the factual summaries of the state court are presumed correct by the federal habeas court. *Marshall v. Lonberger*, 459 U.S. 422, 435 (1983). Thus, the Ohio appellate court's summary statement that there was no evidence that Tuggle feared for his life or acted in defense of another, nor that the victim had taken any action against Tuggle, is presumed correct here.

[190] *Id.*

[191] *Id.*

found that there was no evidence that the victim had threatened Tuggle or that Tuggle feared for his life or acted in self-defense or in defense of others.[192]

Facts found by the state appeals court in its review of the record are presumed correct by the federal habeas court. Among those facts stated by the court in its opinion are that Tuggle was the "instigator" of the immediately prior altercation at the Blueprint nightclub and that he then "initiated" the idea that "members of the Nine Hundred gang [] come to Lincoln Street."[193] Further, the facts found by the court established that Tuggle and Calhoun were seen outside a home on Lincoln Street with guns prior to the group of cars coming down that street.[194] These facts, which are presumed true here, support the conclusion of the appeals court that, under the clearly established federal law of *Mathews*, the evidence did not establish all three elements of self-defense concerning Tuggle, and that Tuggle, therefore, had no right to have the jury instructed in that regard.

After AEDPA review, this ground for relief on the merits should be denied as an alternative to dismissal for procedural default.

### 4.    *Ground three – ineffective assistance of counsel*

In this ground for relief Tuggle maintains that his trial counsel was constitutionally ineffective, citing:

(1)    counsel's failure to object to the purported improper amendment to the indictment more particularly addressed in ground one;

---

[192] *Id.*

[193] *Id.* at 374.

[194] *Id.*

(2)     counsel's failure to object to or request a limiting instruction as to alleged "opinion" testimony by Detective Allen;

(3)     failure to call a proper authenticating witness so that Lawrence Glover could be impeached with his cell phone records – a claim rooted in the facts set forth in ground two; and

(4)     failure to assert a speedy trial violation.[195]

The state appeals court recognized the clearly established federal law of *Strickland v. Washington*,[196] which governs claims of ineffective assistance of counsel.[197] The court then applied *Strickland* to three of the four claims of ineffective assistance, concluding that none of the claims constituted ineffective assistance under the two-prong *Strickland* analysis.[198]

As to the claims arising from a failure to object to an amendment of the indictment, a failure to object to opinion testimony, and a failure to call an authenticating witness for the cell phone records, the Ohio opinion notes that none of these claims involve any deficient performance in violation of the first *Strickland* prong .[199]

The court reasoned as to the alleged opinion testimony of Detective Allen that such testimony was admissible as a lay opinion because Detective Allen was an officer with experience in dealing with youth gangs, and his opinion testimony as to why witnesses in this case may not want to testify, based on that experience and his own observations of the

---

[195] ECF # 1 at 9.

[196] *Strickland v. Washington*, 466 U.S. 668 (1984).

[197] ECF # 10, Attachment at 387.

[198] *Id.* at 387-88.

[199] *Id.* at 387.

investigation in this case, would assist the jury in determining motive and credibility of some of the witnesses.[200] In addition, Detective Allen's reference to an uncalled witness was merely to indicate why such a person was not called, and his  testimony that other witnesses had to told him about the altercation involving Tuggle was not offered for proof of that statement, but to explain why Tuggle was initially investigated.[201] Thus, because admitting this testimony did not amount to error, counsel had no duty to object to its admission.

As to the argument that counsel should have objected to an improper amendment of the indictment, the court relied on its decision, discussed above, that no amendment had occurred here and, therefore, defense counsel had no basis for an objection.

Tuggle asserted that it was ineffective assistance for counsel not to have called an expert to authenticate the cell phone records so that Glover could be impeached by showing that he had initiated the call to Tuggle that led to Tuggle's presence at the scene of the shooting. The court, however, noted that counsel in fact directly questioned Glover about who had made the call that night.[202] The court then reasoned that no matter who made the call, the evidence was that Tuggle "knew or should have known a fight might take place" on Lincoln Street and that he then "conspired in the shooting" that eventually took place there.[203]

---

[200] *Id.* at 383.

[201] *Id.* at 384.

[202] *Id.* at 388.

[203] *Id.*

Thus, the court stated that Tuggle had not shown the importance to the defense of establishing that Glover, not Tuggle, had made the call.[204]

Further, in regards to the second, or prejudice, prong of *Strickland*, the court concluded that Tuggle had not shown that there was a reasonable possibility that, but for the "mistake" of not impeaching Glover on the origin of the phone call, the result of the trial would have been different.[205] The appellate decision observed that the remaining evidence of Tuggle's guilt was sufficient to convict him, and thus any mistake in not impeaching Glover over the phone call was "harmless."[206]

Finally, to counsel's failure to raise a speedy trial violation, the Ohio appeals court did not directly address that claim. As the State points out initially, however, because the Ohio court denied the ineffective assistance claim in full, that decision – even when it does not address one element of the claim – is nonetheless entitled to AEDPA deference.[207] The State further argues that any delay in bringing Tuggle to trial on the aggravated riot charge was not overly long, nor was it unreasonable or prejudicial to Tuggle.[208] Specifically, as the State argues in its brief to the Ohio Supreme Court:

> The record of this case does not contain information regarding the initial indictment or the arrest of defendant. However, it appears that appellant was served with a warrant on June 23, 2006 in Case No. CR 2006-2388.

---

[204] *Id.*

[205] *Id.*

[206] *Id.*

[207] ECF # 10 at 32 (citing [*Harrington v.*] *Richter*, __ U.S. __, 131 S. Ct. at 784).

[208] *Id.* at 31 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Appellant posted bond on July 3, 2006. Ten days ran before appellant posted bond, for a total of 30 days counted against the State. The warrant in Case No. CR 2006-3159 was served on September 25, 2006. From July 4 to September 25, 83 days ran, bringing the total to 113 days. On October 29, 2006, appellant executed the first of four waivers of time constraints. From September 25 to October 19, 24 days ran, subject to the triple-count provision, adding 72 days to the speedy trial clock for a total of 185 days. Appellant then executed four waivers of time and moved for a continuance of trial on three occasions, tolling the speedy trial clock. Appellant also moved for a bill of particulars on March 30, 2007, a request which also served to toll the clock. R.C. 2945.72(F). Additionally, on October 16, 2006, appellant was served with a warrant for a felony charge of possession of crack cocaine in Case No. CR 2006-3281.*

The State acknowledges that in this case, the trial court granted two motions for continuances by the State over the defendant's objection. The first continuance was granted on the date that a plea agreement was reached with appellant's co-defendant, Brandon Calhoun. Both continuances were granted while there was a request for a bill of particulars pending before the court, so that the trial date was postponed from April 17 to May 2, 2007 and subsequently rescheduled from May 2 to May 21, 2007. The trial court's journal entry for the proceedings concluded that the ends of justice required the continuances pursuant to R.C. 2945.02. (Judgment Entries of April 10 and May 2, 2007.) Transcripts from the pre-trial conferences were not included in the record for appellant's original appeal or in the record for this appeal,** but particularly in light of appellant's pending request for a bill of particulars, as well as the developments in the case with appellant's co-defendant, the reasonableness of granting the continuances is readily apparent from the existing record.

*The State notes that the docket for that case does not show that bond was posted as to that charge on September 19, 2006.

**In the absence of evidence to the contrary, the regularity of those proceedings should be presumed. *State v. Martinez*, 6th Dist. No. WD-06-003, 2007-Ohio-3575, ¶14; *State v. Cook*, 6th Dist. No. WD-06-029, 2005-Ohio-1550, ¶10 (citing *Natl. City Bank v. Beyer* (2000), 89 Ohio St.3d 152, 160, 2000-Ohio-126).[209]

---

[209] ECF # 10, Attachment at 355-56.

Tuggle disputes the State's contention that he would have lost the argument that a speedy trial violation existed.[210] Rather, without elaboration, he asserts that if his counsel would have raised a speedy trial violation claim directed to the aggravated riot charges, it "would have resulted in the dismissal of the charges."[211]

The clearly established federal law concerning speedy trial rights was set forth by the Sixth Circuit, as follows:

> The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. In evaluating a Sixth Amendment speedy-trial claim, courts must consider the following four factors: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. 2182. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

> \*  \*  \*  \*  \*

> To trigger a speedy trial analysis, the accused must show that the length of the delay was presumptively prejudicial. *Doggett*, 505 U.S. at 651-52, 112 S.Ct. 2686. Generally, a post-accusation delay is presumptively prejudicial as it approaches one year. *Id.* at 652 n. 1, 112 S. Ct. 2686. When evaluating the reasons for the delay, courts will assign different weights to different reasons. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* "A more neural reason such as negligence or over-crowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*[212]

---

[210] ECF # 11 at 32.

[211] *Id.*

[212] *Alexander v. Warden, Ross Corr. Inst.*, 485 F. App'x 97, 100, 101, 2012 WL 2301651, at \*3 (6th Cir. (Ohio)).

-43-

In analyzing the claim here under the rubric of AEDPA deference and under the law as set forth above, the delay here does not reach the one-year length presumed prejudicial by federal law. Tuggle himself is responsible for three motions for continuance and a request for a bill of particulars – all of which tolled the running of the speedy trial clock in Ohio,[213] and the State's two continuances were given for reasons that the trial court found justified. Such factors, when considered in light of the clearly established federal law cited above, support a conclusion that Tuggle's federal constitutional right to a speedy trial was not violated here, and so that his defense counsel was not ineffective for failing to raise a speedy trial claim.

## Conclusion

For the foregoing reasons, I recommend that the petition of Antoine Tuggle for a writ of habeas corpus be dismissed in part and denied in part as is more fully set forth above.

Dated:  August 14, 2013                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

---

[213] Ohio's statutory and constitutional right to a speedy trial is subject to specific time requirements. *See*, *State v. Johnson*, 2013 WL 938598, at *3 (Ohio Ct. App. March 11, 2013) (citations omitted). A defense motion for a continuance generally tolls the speedy-trial clock in Ohio. *Id.*, at *6 (citations omitted). Ohio's speedy trial scheme is guided "by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Brown v. Bobby*, 656 F.3d 325, 331 (6th Cir. 2011).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[214]

---

[214] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).